WILLIAM W. MACK et al., Appellants, *v.* EDWARD P. SNELL, Respondent.

The owner of materials who delivers them to others employed to manufacture them into goods, does not lose his property therein, nor is he precluded, by receiving the manufactured articles, from asserting his title, and at the same time resisting a recovery for the work on the ground that the workman has not performed his contract; and this, although the latter has furnished some material.

The parties entered into a contract, by the terms of which, plaintiffs agreed to manufacture for the defendant 1,000 pairs of pruning shears, to be in all respects like a sample furnished; defendant to furnish the rough castings for the handles, etc., and plaintiffs the blades.  In an action to recover the contract price for the work, in which defendant set up as a counterclaim failure to perform and asked damages for the breach, these facts appeared: Defendant delivered the castings and plaintiffs manufactured the shears, but failed to conform to the sample, and in consequence, they were worthless.  Defendant received a portion of the shears, but on discovery of the defect refused to receive the balance.  The defect was not discoverable by inspection of the shears in their completed state, but only by taking one of them apart, and defendant did not discover it until all were manufactured.  *Held* (O'BRIEN and MAYNARD, JJ., dissenting), that the contract was one of bailment, not of purchase and sale, and so; the title to the completed shears was at all times in the defendant, and this notwithstanding his refusal to receive them; that plaintiffs, having wholly failed to perform, were not entitled to recover anything for their work; that the acceptance of part of the shears and the omission to return them on discovery of the defect or to notify plaintiffs thereof did not preclude defendant from claiming non-performance, as he had the absolute right to retain them, and was neither bound to inspect them or to notify plaintiffs of his objections.

Also, *held*, that defendant was entitled to recover upon the counterclaim as damages, the difference between the price agreed upon for plaintiffs' work and the value of the shears had they been made according to contract.

(Argued June 29, 1893; decided November 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made June 23, 1892, which affirmed a judg-

ment in favor of defendant entered upon the report of a referee.

This action was brought to recover $699 for labor performed and materials furnished by plaintiffs in the manufacture of 1,000 pruning shears, under a contract with defendant.

By the terms of said contract defendant was to furnish the rough castings for the handles, etc., and plaintiffs the blades, and complete their manufacture so as to conform to a sample furnished. The answer set up as a counterclaim that plaintiffs warranted the shears, and that they were imperfectly made, and asked damages for breach of the warranty.

The referee found that the shears manufactured were not like the sample, and were worthless, and directed judgment in favor of defendant for the difference between the value of the shears, if made according to contract, and the price agreed to be paid plaintiffs for the manufacture.

The facts and the findings of the referee, so far as material, are stated in the opinions.

*Henry M. Hill* for appellant. Assuming that these findings were correct, and, therefore, that the work of the plaintiffs was not performed in accordance with the contract, the plaintiffs were, nevertheless, entitled to recover, for the reason that the defendant waived the defects. (*Read* v. *Randall*, 29 N. Y. 358 ; *G. M. Co.* v. *Allen*, 53 id. 515, 519 ; *Dounce* v. *Dow*, 64 id. 411 ; *Mason* v. *Smith*, 130 id. 474, 480 ; *C. I. Co*. v. *Pope*, 108 id. 232, 236 ; *Studer* v. *Bleistein*, 115 id. 316, 325 ; *Pierson* v. *Crooks*, Id. 539 ; *Norton* v. *Dreyfuss*, 106 id. 90 ; 2 Schouler on Pers. Prop. § 381 ; *Leavenworth* v. *Packer*, 52 Barb. 132 ; *Pomeroy* v. *Shaw*, 2 Daly, 267 ; Tiedeman on Sales, § 115 ; *Brown* v. *Foster*, 108 N. Y. 387 ; *Beach* v. *Kidder*, 8 N. Y. Supp. 587 ; *Knickerbocker* v. *Gould*, 115 N. Y. 533 ; *Quincey* v. *White*, 63 id. 370.) Defendant was not entitled to recover an affirmative judgment. (Edwards on Bailments, § 410 ; Story on Bailments, § 423 ; *Higgins* v. *Murray*, 73 N. Y. 252, 254 ; *Stewart* v. *Stone*, 127 id. 503, 505 ; Benjamin on Sales, §§ 610, 673 ;

Sedg. on Dam. § 759 ; 2 Schouler on Pers. Prop. § 3281 ; *D. Co.* v. *Harding,* 49 N. Y. 321 ; *Studer* v. *Bleistein,* 115 id. 316, 324 ; *Zabriskie* v. *C. V. R. R. Co.,* 131 id. 72, 78.)

*Heman W. Morris* for respondent. There has been no acceptance of the shears by the defendant, and he has never waived a substantial performance of the contract by the plaintiffs. (*Harris* v. *Rathburn,* 2 Keyes, 312 ; *Van Schaick* v. *Sigel,* 60 How. Pr. 122 ; *F. C. Co.* v. *Metzger,* 118 N. Y. 264 ; *Gurney* v. *A. & G. W. R. R. Co.,* 58 id. 358 ; *Briggs* v. *Hilton,* 99 id. 525.) The contract between plaintiffs and defendant was essentially one of bailment in which defendant delivered his goods to plaintiff to have labor performed on them and materials added thereto, when the same goods were to be returned to him without loss of identity and without substantial change. (*Pierce* v. *Schenck,* 3 Hill, 28.) Assuming that the contract was in legal effect an executory contract for the sale of the shears, still, in no possible aspect of the case, are plaintiffs entitled to recover. (*White* v. *Miller,* 71 N. Y. 118 ; *Van Wyck* v. *Allen,* 69 id. 61 ; *Hawkins* v. *Pemberton,* 51 id. 198 ; *Muller* v. *Eno,* 14 id. 597 ; *Norton* v. *Dreyfuss,* 106 id. 94.) Defendant was properly allowed the damages which he sustained from plaintiffs' breach of the contract, by way of counterclaim. (*Muller* v. *Eno,* 14 N. Y. 597 ; *Cary* v. *Gruman,* 4 Hill, 625 ; *Dillon* v. *Anderson,* 43 N. Y. 237.)

ANDREWS, Ch. J. The referee found and both parties concede that the contract between the parties was one of bailment and not of purchase and sale. The consequence follows that the title to the completed shears was at all times in the defendant. The materials added by the plaintiffs in performing their contract became by accession, when joined with the material furnished by the defendant, the property of the latter, he having furnished the principal part, the part furnished by the plaintiff being accessorial merely. (*Pierce* v. *Shenck,* 3 Hill, 28 ; *Foster* v. *Pettibone,* 7 N. Y. 435 ; *Merritt* v. *John-*

*son,* 7 Johns. 473.) When, therefore, the plaintiffs delivered to the defendant in January, 1884, one hundred and forty-six pairs of completed shears, it was a delivery to the defendant of his own property, and the title to the undelivered shears, completed in March, 1884, was also in the defendant, notwithstanding his refusal to receive them. The plaintiffs agreed to manufacture the shears, using the handles furnished by the defendant, for the sum of seventy-four cents per pair, to be made in all respects like the sample. The referee found that the shears manufactured were not like the sample, but were defective by reason of not conforming thereto, whereby they were useless and of no value, and that the defects were not discoverable by inspection of the shears in their completed state, but that by unscrewing the nut which holds the parts of the shears together and separating them, the defects could be seen. It is also found that the defendant did not discover the defects in the shears until all the shears had been manufactured and were ready for delivery.

Upon these findings, which are supported by evidence, no action lies in favor of the plaintiffs to recover for work, labor or materials. They wholly failed to perform their contract in its true scope and meaning. It is plain that under the general rule no compensation can be demanded by the plaintiffs. The consideration upon which the defendant's promise rested has never been furnished. The defendant, it is true, has title to the shears, but this is because he owned the materials out of which they were made; the articles he contracted for have never been furnished. In place of these were furnished articles useless and valueless because of defects in construction not existing in the sample shears. The claim is made, however, that the plaintiffs are entitled to recover on the contract, not on the ground of performance, but by reason of the omission of the defendant to reject and return the shears delivered in January, 1884, or to notify the plaintiffs that they did not conform to the contract. The silence of the defendant, it is claimed, operated in law as an acceptance of the shears delivered, and precludes him from claiming that those subse-

quently manufactured of the same kind were defective. The plaintiffs seek to apply the principle governing executory contracts for the manufacture and sale of chattels of a specified kind, subsequently delivered by the vendor in performance of the contract. In such cases the law imposes upon the vendee the obligation to make examination for the purpose of ascertaining whether the articles delivered conform to the contract, and if he fails to make inspection within a reasonable time, he will, in the absence of fraud or express warranty, be concluded from afterwards setting up the existence of defects which an inspection would have disclosed. This rule has, we think, no application to a case like this. In the case of vendor and vendee under an executory contract, on delivery of the goods the title passes conditionally only to the vendee. It is necessary to the proper protection of the vendor that the vendee, if he rejects the goods and thereby throws them back upon the vendor, should act with reasonable promptness. It would be unjust to permit him to retain the goods after opportunity for inspection, giving no sign, and subsequently claim that they were not according to the contract. He is bound to express his dissent, and thus enable the vendor to protect his interests. The reason upon which the doctrine governing executory contracts for the sale of chattels subsequently delivered rests, is inapplicable to contracts for the manufacture of articles from materials furnished to the manufacturer by the other party to the contract. The title to the things manufactured is in the owner of the materials, whether they conform to the contract or not. The claim of the other party is for work and labor. The employer may await the presentation of the claim of the other party before acting. His retention of the articles manufactured is the exercise of an absolute right, and he is neither bound to inspect the articles nor to notify the other party of his objections. The omission to object may, in many cases, be material evidence on the question of performance, and in case of continuous deliveries of articles manufactured from time to time, the duty to speak after knowing the defects might arise. But in the present case the findings exclude the

inference of bad faith on the part of the defendant, or that, knowing that the shears delivered were defective, he remained silent and permitted the plaintiffs to manufacture the others. The fact that the defendant retained the shears delivered and did not offer to return them after he discovered that they were defective, is no answer to the defense that the plaintiffs had not performed their contract. The defendant's possession followed the title, and the plaintiffs in no event were entitled to have the shears delivered returned to them. The owner of real property who has employed another to erect a house on his land, does not, by taking possession of the house and occupying it, preclude himself from denying that the builder has performed his contract. (*Smith* v. *Brady*, 17 N. Y. 173.) In like manner the owner of materials who employs another to manufacture them into garments or chattels of any description, does not lose his property in the materials, nor is he precluded by receiving the manufactured articles from asserting his title thereto, and at the same time resisting a recovery for the value of the work, on the ground that the workman had not performed his contract.

In respect to the judgment for the defendant on his counterclaim, we perceive no legal error. It represents the value of the contract to the defendant in case the plaintiffs had performed, measured by the difference between the price agreed to be paid by the defendant for the shears, and their market value if made according to the contract. The claim that as the title to the shears manufactured was in the defendant, the value of the materials should have been deducted, is not presented by any finding or exception, and it cannot be affirmed upon this record that the materials, in the condition in which they then were, were of any value to the defendant. The exception to the finding of the referee that there was an express warranty that the shears should conform to the sample, which warranty would survive an acceptance of the shears, need not be considered. The facts found show that the plaintiffs did not perform their contract and were not entitled to recover thereon. The result reached would not be

affected by an error, if any, in characterizing the plaintiffs' contract to make the shears according to the sample as an express warranty which would survive an acceptance of the shears.

We find no error in the record and the judgment should be affirmed.

O'BRIEN, J. (dissenting). The plaintiffs sued to recover the stipulated price for the manufacture of one thousand pairs of pruning shears under an agreement made with the defendant. By the judgment they not only were defeated in the attempt to recover the price, but the defendant was awarded a considerable sum as damages upon a counterclaim, based upon the allegation that the plaintiffs did not manufacture the articles as stipulated ; and it was also adjudged that the shears belonged to the defendant, so that the plaintiffs have lost their labor and materials, have been condemned to pay a judgment to the defendant for damages, and the latter has the title to the manufactured articles. At first view this seems to be a harsh result which at once invites an examination of the principles and the reasoning upon which it proceeds. The facts have been very fully found by the learned referee upon evidence, quite conflicting on some material points, but, we think, they are not open to question here.

From these findings it appears that, in the month of November, 1883, the plaintiffs agreed to manufacture for the defendant one thousand pairs of pruning shears for use, chiefly in vineyards, and of the kind, pattern and quality of a sample pair which the defendant furnished for the purpose, except in some particulars not important to notice, to be completed on or before January 1, 1884. The defendant agreed to furnish the rough castings for the handles, the small castings around which the springs are coiled, and have them japanned, and the plaintiff was to perform all the labor and furnish the rest of the material, for which the defendant was to pay them the sum of seventy-five cents per pair. The defendant had contracted to sell the goods when made to a nurseryman, and this was known

to the plaintiffs. The plaintiffs claim that they manufactured the goods according to the contract, and offered to deliver them, but the defendant has failed to pay the price. It is found that the defendant furnished the material according to his agreement, except that it was not furnished in time to enable the plaintiff to complete the work at the time stipulated. In the month of January, 1884, the plaintiffs delivered to the defendant one hundred and forty-six pairs of the shears which the defendant retained, and the balance was completed and ready for delivery in March following, and the defendant was notified of that fact. That as to the one hundred and forty-six pairs delivered and retained, and the balance offered to the defendant, he never made any objection that they were in any respect defective or not in conformity with the contract, until this action was commenced, April 10, 1888, and never offered to return those delivered. It is found that the shears manufactured did not correspond with the sample in two particulars: (1) That the hole through the knife blade handle was made round, while in the sample it was square. (2) That the shoulder of the bolt holding the handles together should have projected through the jawhandle. That in consequence of this deviation from the sample and the agreement, they failed to work and were worthless. That these defects could not be discovered by inspection, but could by unscrewing the nut holding the shears together, and thus taking them apart, and had they corresponded with the sample they would have been worth one dollar per pair in March, 1884. There is a further finding that the defendant did not discover the defects referred to until the shears were ready for delivery, and that he refused to receive the balance of the lot offered in March, 1884. On these facts the learned referee held, as matter of law, that the contract was one of bailment, and the title to the material furnished by defendant remained in him, and that he acquired title to the completed articles by accession; that there was an express warranty on the part of the plaintiffs, that the manufactured article should be the same and as good as the sample; that the defendant was under no

obligation to return or offer to return the shears delivered ; that defendant's right to damages survived an acceptance ; that plaintiffs were not entitled to recover anything for the shears, but that defendant was entitled to recover damages by way of counterclaim, to be measured by the difference between the contract price and the market value, had the article corresponded with the sample and the contract.   It appears from the defendant's answer that the nurseryman, to whom he had contracted to sell the whole lot of shears, refused to take them because they were not ready for delivery in time, and that the defendant was not able to procure the material till it was too late to have them manufactured at the time specified.   This was not the plaintiffs' fault and there is no finding that there was any breach of the contract in regard to the time of performance. It is fairly inferable from the whole record that the defendant lost the benefit of his contract for the sale of the goods, not on account of any defect in the manufacture, but for the reason that they were not ready in time.   It should be observed also that the plaintiffs from time to time presented their bill to the defendant and no objection was made to it, though it was not paid.   It is quite likely that a recovery could have been had upon an account stated had the plaintiffs adopted that form of action. (*Knickerbocker* v. *Gould*, 115 N. Y. 533 ; *Quincy* v. *White*, 63 id. 370.)

How far the same facts will preclude the defendant now from asserting a breach of the contract as a ground for refusing payment, or of an affirmative claim for damages, is a question naturally suggested.   Where materials are furnished by one, and labor is to be performed upon it by another, and the identical article produced is to be returned to the employer, who pays a compensation for the labor, the contract is one of bailment, though the manufacturer or workman may have furnished some accessorial material or ornaments.   This is the *locatio operis faciendi* of the civil law. (Story on Bailments, §§ 422, 423 ; 2 Kent's Com. [13th ed.] 588 ; *Foster* v. *Pettibone*, 7 N. Y. 433 ; *Mallory* v. *Willis*, 4 id. 76 ; *Pierce* v. *Schenck*, 3 Hill, 28.)

The title to the completed article generally vests by accession in the party who has furnished the principal material in such cases. (*Merrill* v. *Johnson*, 7 Johns. 473 ; *Pulcifer* v. *Page,* 32 Me. 404 ; *Witherell* v. *Green*, 22 Mich. 311 ; *Beers* v. *St. John*, 16 Conn. 322.)

It does not distinctly appear in this case whether the material furnished by the plaintiffs, or that furnished by the defendant, was the more valuable, but the referee held, in effect, that the defendant furnished the principal material and, as no question is made by either counsel on this point, we will assume that his conclusions as to the nature and character of the contract and as to the ownership of the completed article, are correct. The finding of the referee that one hundred and forty-six pairs of the shears were delivered in January, 1884, and retained by the defendant, without any objection being made to the quality of the work, or any offer to return, followed by a completion of the balance in the same way and an offer to deliver in the following March, without any question having been raised for more than four years by the defendant in respect to the character or quality of the work performed, seems to me to be quite important. The findings are to the effect that the defendant never claimed that the shears did not substantially conform to the contract until more than four years after a part were delivered, and the balance offered. · There can be no doubt as to the fact that the defendant could have discovered the alleged defects when one hundred and forty-six pairs were delivered, or within a reasonable time thereafter, and if it was then considered important that the hole through the blade handle should be square instead of round, or that the bolt should project through the jawhandle, the defendant could have so notified the plaintiffs and the balance of the lot could have been changed accordingly, for they were not then manufactured. In an executory contract for the sale of goods, in the absence of fraud or warranty, the right of the vendee to claim damages, either as a defense to an action for the purchase price, or by way of counterclaim, does not survive a delivery of the goods by the

seller and an acceptance by the purchaser. (*Read* v. *Randall*, 29 N. Y. 358.)   The retention of the property by the purchaser, without objection, is an admission on his part that the contract has been performed.   Of course, he is not bound to receive or pay for an article he has not purchased, but he is bound to ascertain, when it is delivered to him, whether or not it is what he wants, or whether it conforms to the contract, and if it does not he must either return it to the vendor or give him notice to take it back, or he will be presumed to have acquiesced in its quality.   He cannot accept the delivery of property, under the contract, retain it after examination, or full opportunity for examination, as to its quality, and afterwards be heard to urge, as a defense to the purchase price, or in support of a claim for damage, that the quality was inferior to that specified in the contract.   Where there is an express warranty, that survives the acceptance and the purchaser may subsequently sue on it, if the price of the goods has been paid, or defend in a suit for the price. (*Zabriskie* v. *C. V. R. R. Co.*, 131 N. Y. 72; *Fairbank C. Co.* v. *Metzger*, 118 id. 260; *Briggs* v. *Hilton*, 99 id. 517; *Norton* v. *Dreyfuss*, 106 id. 90.)

But this principle applies to contracts of sale, and cannot well be applied to agreements to perform special services or contracts of bailment such as the one now under consideration has been held to be.   An acceptance of property under any form of contract, or conduct equivalent to an acceptance, must be given some effect.   In contracts of sale, even with warranty, it usually has the effect of vesting the title in the vendee, but in a contract like this, where the title was in the defendant before, it can have no effect whatever, unless it be to preclude him from raising any question with respect to the quality of the article.   The facts found import an acceptance by the defendant, at least of the one hundred and forty-six pairs, as there was delivery, retention of the goods without objection, and no offer to return.   Silence and acquiescence on the part of the defendant as to the quality and character of the work, naturally led to the manufacture of the balance in the same way, and the question is, under these circumstances, whether

the defendant, after the lapse of four years, should be permitted to make the objection that the contract was not substantially performed. The learned referee held that as there was a warranty that survived acceptance, as in case of sale, the defendant was under no obligation to ascertain whether the contract was performed or not, and that, even when he ascertained that the work was defective, he was under no obligation to make his objection known to the plaintiffs. This proposition, as it seems to me, embodies a radical error which pervades the whole case.

. It is undoubtedly true that a workman who undertakes to make an article from material furnished by another, according to a sample furnished, and to deliver it to him, must show performance in order to recover the stipulated price and is liable for damages for a breach of his contract. But it does not follow that this liability survives a delivery and acceptance as in cases of sales of goods with warranty. When the owner, without fraud or mistake, expressly or by silence and acquiescence, accepts the article, that liability is at an end and the workman is entitled to his pay. If a builder contracts to erect a house according to certain plans or after the model of another house and the owner accepts the work when done and enters into possession of the house without any objection as to the work or any notice to the builder that the contract has not been performed, with respect to its completion, or the character or quality of the work or material, this would be held to be an admission on his part that the contract was performed and, in an action for the price by the builder years afterwards, the owner would be concluded by his acts from asserting that the builder had no claim for damages on account of defective work or material. So if cloth be delivered to a tailor to make a coat, and it is delivered to the owner when made, who accepts it, or retains and uses it for a long time, without any objection or claim of defective workmanship, he cannot be heard to claim, when sued for the price of the work, that it was not done according to agreement, and it would not strengthen such a claim to call the workman's agreement to

make the coat, according to a certain style or pattern, a warranty that survived acceptance. In such cases acceptance or omission to object, within a reasonable time after delivery, or opportunity for examination, operates to extinguish all claims for breach of the contract. (*Sprague* v. *Blake*, 20 Wend. 60; *Copley Iron Co.* v. *Pope*, 108 N. Y. 232; *Brown* v. *Foster*, Id. 387; *Studer* v. *Bleistein*, 115 id. 316; *Pierson* v. *Crooks*, Id. 539; *Mason* v. *Smith*, 130 id. 474; *Norton* v. *Dreyfuss*, 106 id. 90.)

That element of a contract known to the law as a warranty, is peculiar to contracts for the sale of property and policies of insurance. In its application to the sale of goods it is but the agreement of the seller that they will correspond to the terms of the contract, with respect to quality or quantity, and this undertaking is so far collateral that it survives an acceptance of the goods by the purchaser. Such a warranty, when it exists, is connected with and belongs to a contract of sale as one of its elements, but, in the sense in which it is understood in the law of sales, can have no application to a bailment, where one party agrees to perform labor upon the materials of another and to make for the employer an article to correspond with a sample. (*Eighmie* v. *Taylor*, 98 N. Y. 288; Benjamin on Sales, §§ 610, 673; Sedg. on Dam. § 759; 2 Schouler on Per. Prop. § 328; Hilliard on Sales, 322, *et seq.*)

The cases cited by the learned referee and the counsel for the defendant are all, with perhaps one exception, where the question as to the warranty arose upon contracts for the sale of property. It is conceded that in such cases a warranty survives acceptance. The case of *Harris* v. *Rathbun* (2 Keyes, 312) was one of bailment, and the dissenting opinion of Judge Wright states that the warranty could not survive the acceptance by the owner of the lumber which had been sawed from his logs. In the other opinions this point is not noticed, but it distinctly appears that when the owner took the lumber from the mill he objected to the way in which the sawing was done, and notified the sawyer that it was not according to the contract.

In *Smith* v. *Brady* (17 N. Y. 173) it was held that a builder who had agreed to erect a house, could not recover without showing that the work was done according to the contract, though the owner had entered into the possession and enjoyment of the house without objection. But in that case it appeared that the evidence of performance was, by the stipulation of the parties, to be the certificate of an architect, which was not furnished. Moreover the rigorous application of a correct principle in that case has been much relaxed by subsequent cases in this court. (*Woodward* v. *Fuller*, 80 N. Y. 315; *Nolan* v. *Whitney*, 88 id. 648; *Phillip* v. *Gallant*, 62 id. 256; *Sinclair* v. *Tallmadge*, 35 Barb. 602.)

It appears that about seventy pairs of the shears were sold and delivered during the summer of 1884, by a third party to a nurseryman, with the consent and at the request of the defendant, who had the benefit of the sale. This dealing with the property is utterly inconsistent with the position of the defendant now, that the contract was not performed. The findings, however, are too indistinct on this point to make it the basis of a decision upon this appeal. I prefer to let the decision rest upon the ground that the referee erred in applying to this case the doctrine that a warranty, or agreement on the part of the plaintiffs, that the manufactured article would be like the sample, survives acceptance.

I think the judgment should be reversed, and a new trial granted, costs to abide the event.

EARL, FINCH, PECKHAM and GRAY, JJ., concur with ANDREWS, Ch. J.

MAYNARD, J., concurs with O'BRIEN, J., dissenting.

Judgment affirmed.