Chief Judge Conway.
Aronette Manufacturing Company, the plaintiff-respondent, is a manufacturer of raincoats. In December, 1950 Aronette agreed to purchase textiles from Burlington Mills Avhich textiles were already treated to be “ crease resistant ” but not made water repellant. Burlington Mills agreed to send the goods for plaintiff to appellant Capitol Piece Dye Works, a waterproofer of textiles, to make the goods Avater repellant Avith a 1 £ Zelan ’ ’ process and then ship them to Aronette. The president of Aronette, who was apprehensive of *467 purchasing “ crease resistant” goods and then having them made water repellant at a separate factory, insisted on having sample pieces sent through before he would confirm the order. Accordingly, three pieces were so treated by Capitol, who sent them to Aronette where they were tested and found odor free and satisfactory. These pieces were cut and made into sample raincoats which were employed for sales purposes. Then, Aronette confirmed the whole order which was sent to Capitol to be processed. It was then forwarded to Aronette. Shortly after arrival, while the goods were being fabricated into raincoats, a strong fishy odor arose in Aronette’s plant. It was quickly traced to the goods. Aronette wrote Capitol complaining that “ this odor is so bad that we cannot continue cutting any of these goods.” Capitol replied, through its president, that there was an odor present in the goods even before they were processed but that “ when air and cold moisture hits them, the smell disappears ’ ’, and that £ £ Every piece of goods having Zelan applied has a certain amount of odor which eventually disappears.” But the odor continued and even increased. Plaintiff advised Capitol of this fact by letter only to receive more assurances that the odor would pass and that “ if you pick out the above pieces [11 of them] and put them aside, you won’t have any trouble when the garments are made up.” More complaints only resulted in more assurances until Capitol suggested a firm which was in the business of removing odors from garments and, then, finally denied responsibility in a letter addressed to plaintiff’s attorney. In the meantime, raincoats made out of the goods were being refused and sent back by plaintiff’s customers because of the odor. Burlington Mills also denied responsibility and suggested that Aronette resolve the matter with Capitol.
Aronette commenced an action against Capitol in January, 1952 charging that Capitol breached its responsibility to render the goods properly water repellant by imparting to them a strong fishy odor to plaintiff’s damage. Subsequently, plaintiff joined Burlington Mills as a party defendant alleging a breach of warranties of fitness and of merchantable quality. The trial was held before the court sitting without a jury. Both defendants moved to dismiss at the end of the plaintiff’s case on the ground that plaintiff had failed to establish a prima facie case. The *468 court reserved decision, whereupon both defendants rested without putting in any proof and renewed their motions to dismiss.
It is apparent from the record that plaintiff, burdened with odoriferous, inferior merchandise but not knowing with particularity what had occurred in either of defendants’ factories, could not be certain as to which of the defendants was responsible. Furthermore, both defendants’ declination to put in any proof maintained this uncertainty. The trial court resolved the dilemma by finding that the evidence was sufficient to show that the fishy smell was caused by improper processing in the application of the Zelan finish, in that there was no claim that the fabric, outside of 12 pieces, had any odor when sent to Capitol for processing. In addition, the court found that plaintiff had not sustained its burden against Burlington. The Appellate Division affirmed without opinion, with one of the Justices dissenting without opinion.
Defendant Capitol argues in our court that the judgment is based on speculation, conjecture and surmise. It points out further that plaintiff’s expert witness was unable to point unequivocally to appellant’s waterproofing process as the cause of the odor. Respondent, in turn, argues that it did make out a prima facie case to prove that there was an improper application of the Zelan process.
There is no question that the goods belonged to Aronette and were sent to Capitol to have work performed upon them for a consideration. That constituted, at common law, a bailment locatio operis faciendi — a form of bailment for mutual benefit. (See Foster v. Pettibone, 7 N. Y. 433; Mallory v. Willis, 4 N. Y. 76; Douglass v. Hart, 103 Conn. 685; Ann. 44 A. L. R. 824; Bouvier’s Law Dictionary [Rowle’s 3d Rev.], Vol. 1, pp. 313, 316.) Since it was a bailment for mutual benefit, the bailee was obliged, in the absence of an express agreement to the contrary, to exercise ordinary care in relation to the article bailed (Klar v. H & M Parcel Room, 270 App. Div. 538, 541, affd. 296 N. Y. 1044). In our case, the duty becomes a responsibility to perform ordinarily skillful work on the goods and to render the goods, insofar as they áre capable, reasonably fit for the purpose intended (Douglass v. Hart, supra). Thus, -there is no question that Capitol, on the basis of the record, was obliged to do a workmanlike job. There is also no question but that the goods were *469 damaged by poor, unworkmanlike processing by Capitol and/or Burlington Mills. It is also a well-settled rule in the law of bailments, in which the bailee is to perform services upon the goods, that if the bailor can prove the condition of the goods when delivered, the nature of the subsequent injuries and that they were not the result of ordinary wear and tear, the burden of going forward with the evidence is shifted to the bailee who had the goods exclusively under his control and who should be able to show the manner in which he discharged his contract obligations (Wintringham v. Hayes, 144 N. Y. 1, 5-6; see, also, Stewart v. Stone, 127 N. Y. 500; Collins v. Bennett, 46 N. Y. 490, 493, 494; Richardson, Evidence [3d ed., 1955], § 109). It is cases such as the present one which demonstrate the need for such a rule. The goods were in the exclusive possession of Capitol who put in no evidence to explain its services, precautions and methods of processing. However, before any such presumption may be indulged in, it must be shown that the material was in good condition when it arrived at Capitol’s place of business. (See, e.g., Gerdau Co. v. Browne-Morton Stores, 1 A D 2d 581, affd. 2 N Y 2d 905.)
The record discloses that Capitol’s president admitted that those samples of the goods which he claimed had an odor on arrival at his place of business, had a “ not-fishy ” odor. In one of its letters to Aronette, Capitol implied that those pieces which it did not set forth as having an odor on arrival at Capitol were in good condition. In addition, the test pieces which plaintiff sent through before confirming the order did not develop the “ fishy ” odor. Thus it was established that a workmanlike job would not result in such an odor and also that the goods when “ crease resistant ” were amenable to successful waterproofing. Furthermore, the expert for plaintiff, though he would not specify which of the two processes had caused the odor, did testify that it was caused by the improper application of one of them. Hence, there was sufficient evidence to support the inference (particularly from the fact that no “ fishy ” odor was present on arrival of the goods at Capitol’s plant) that the damage occurred during the period of the bailment locatio operis faciendi and that appellant did not discharge properly the obligations of the bailment. ■ Moreover, appellant has declined to rebut this inference, which has survived, in order to pose a valid *470 question of fact for the trial court. Therefore, we cannot say, as a matter of law, that the evidence was insufficient to support the decision and judgment for the plaintiff. There is no need to pass upon the other questions argued in this court as to alternate theories of liability.
Accordingly, the judgment of the Appellate Division should be affirmed, with costs.
Judges Desmond, Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Judgment affirmed.